## PORTER v. MELANCON.
### No. 14353.

Court of Appeal of Louisiana. Orleans.
March 13, 1933.

St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, for appellant.

Lester Pailet and Harry R. Cabral, both of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit for physical injuries and mental anguish caused by a collision between a Dodge touring car owned by Edward Porter, Sr., and operated by Edward Porter, Jr., and a Chevrolet owned and operated by Numa M. Melancon. The accident occurred in the parish of St. John the Baptist on highway 61 at a point about 40 miles from the city of New Orleans, near the town of Mt. Airey, on Sunday, December 7, 1930, at approximately 7:15 p. m. The Porter car was traveling northward from New Orleans toward Baton Rouge, La., and the Melancon car was going southward in the direction of New Orleans. The occupants of the Porter car were Edward Porter, Jr., his uncle, John Porter, his mother and father, and brother, Howard Porter. The occupants of the Chevrolet car, in addition to Melancon, were his wife and small son, who were in the front, or driver's, seat, and Mr. and Mrs. Wolverton and their small son in the rear seat. The highway, at the point where the accident occurred, was about 25 feet wide. The middle of the road is surfaced by an asphalt covering, or "black top," with a 5-foot gravel shoulder on each side.

Plaintiff and his witnesses testify that the Porter car was proceeding along the

extreme right side of the road, with the right wheels on the gravel shoulder, and the left wheels some 3 or 4 feet nearer the center of the road on the black top, and that the Chevrolet, which was being driven very rapidly (55 miles per hour, it is claimed), drove into the Dodge because of the driver's failure to keep on his side of the road.

On the other hand, defendant denies that the Chevrolet was on the wrong side of the road, or that it was being driven at an excessive rate of speed, and contends that the accident was caused by the serpentine course of the Dodge, which was "zigzagging" from one side of the road to the other. The occupants of defendant's car who testified in the case, like those in plaintiff's car, sustained the contention of the driver of their car.

It is also argued on behalf of the defendant that the Porter car, which was a second-hand Dodge touring car, and had been purchased by its owner for $130, was in bad mechanical condition, and, at the time of the accident, unmanageable at the great speed at which it was driven, as indicated by the fact that it described two somersaults after contact with the Chevrolet, coming to rest in the ditch on the side of the road, facing in the opposite direction. The left front axle of the Dodge car was broken off, causing the left front end to immediately drop to the roadway, with the result that its jagged fragment dug into the asphalt surface of the roadway, causing a deep gash 10 feet in length. This gash begins at a point about 3 feet from the right-hand side of the road, and extends diagonally across toward the left-hand side, indicating to our minds that the point of contact between the two cars occurred well over the middle of the road and in the path in which plaintiff's car was being driven. The location of this cut in the asphalt we believe to be the determining factor in this case, because, even if both cars had been going very fast, as is respectively charged by one side as against the other, and both cars had maintained their positions on the proper side of the roadway, there would have been no collision, and, if the accident had been caused by the serpentine course pursued by the Dodge car, the point of contact would not have been on the plaintiff's side of the road, assuming the Chevrolet kept its proper course. The location of this cut is testified to by all Porter's witnesses and by Dr. Etienne P. Feucht, the coroner, and two of the coroner's jury, which exculpated Melancon from the charge of legal responsibility for the death of John Porter, one of the occupants of the Porter car who was killed as a result of the accident. Two jurymen, Lozain Trosclair and Joseph Ory, together with the Porters, located the beginning of the cut 3 feet from the edge of the black top, which would be well over on plaintiff's side of the road. Dr. Feucht, the coroner, places it 6

feet from the edge of the black top, but, when asked which side of the road it began on, answered "on the woods side" (the right, or Porter's, side of the road). The cut in the road proceeded along the right side for about 10 feet, then crossed the middle of the road about 2 feet, fading out at that point, but pointing in the direction of the Dodge car, which was lying in the ditch on the left-hand side facing New Orleans, or in the opposite direction from which it had been driven.

It is suggested by counsel for defendant that the coroner and the two jury men could hardly be classed as disinterested witnesses because "all three witnesses live in the Parish of St. John the Baptist and are not subject to the subpoena of this court, but voluntarily made the trip to New Orleans to testify on behalf of plaintiff. The situation is emphasized when it is further pointed out that the plaintiff is a negro and all three of these witnesses are white men. Furthermore, it strikes us as peculiar that these 'disinterested' witnesses should have made this trip to New Orleans to testify on behalf of these negroes when they served on the coroner's jury which acquitted the defendant of any guilt in connection with the death of John Porter, the negro killed in this accident."

We cannot follow this argument, and find nothing suspicious in the fact that the doctor and the two other white jury men testified in behalf of the negro plaintiff, when they had formed part of the coroner's jury which acquitted Melancon. On the contrary, it seems to us commendable that white men should have been at pains to testify on behalf of a negro in order that such facts as were within their knowledge might be developed, to the end that the negro might have an opportunity to fully present his case. Nor is the conduct of the coroner and his jury men inconsistent with their action in failing to hold Melancon guilty of criminal responsibility for John Porter's death, for criminal responsibility is one thing and civil another.

It is suggested that this cut in the road may have been made by the Chevrolet car by the wheels becoming entangled "for at least a fraction of a second, in which event the rear of the Dodge, considering its speed, could have been thrown completely around so that when the axle or 'king bolt' struck the road, the rear was towards Baton Rouge and its left hand side towards the woods. This would cause the gash to be on the woods side of the road, although the collision did not occur there." We do not believe this explanation to be plausible, and, if possible at all, only remotely so.

On the question of the mechanical condition of the Dodge car, it is true that it was an old one and had been purchased by Porter for a very small sum, but the testimony is to the effect that it had been repaired just

shortly before the accident, and the mere fact that it was about 5 years old is not sufficient to justify the conclusion that it was unsafe and unmanageable. Moreover, the trial judge, upon the evidence which we have discussed, held the defendant responsible for the accident, and, were we in doubt on this point, his conclusion, based upon a consideration of questions of fact, would be a determining factor.

■ Plaintiff sues for the value of his car and for physical injuries sustained as a result of the accident. The car cost him $130, and, as we have said, was repaired shortly before the accident, though the cost of repairs does not appear to have been established. Plaintiff's lip was cut, his neck sprained, and he suffered contusions and bruises. His bill for medical services and for drugs amounted to $65. He suffered some loss of wages, the amount of which has not been satisfactorily proven. The balance of his claim is based upon physical suffering resulting from his injuries and mental suffering because of the fact that he was unable to attend his father's funeral in Woodville, Miss., to which point he was journeying at the time of the accident. It is said that the amount allowed by the trial court for these items is wholly inadequate, emphasis being placed upon the mental anguish sustained by plaintiff by reason of his having been prevented from being present at the burial of his father. His father was 85 years of age at the time of his death and plaintiff was 52.

We recognize, and our courts allow damages for, mental anguish, but the utmost difficulty is experienced in estimating the proper award. All things considered, we prefer to adopt the view of our brother below, who awarded plaintiff $650 for all items of damages claimed.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.